IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **VELEZ LAW GROUP LLC,** *a Wyoming Limited Liability Company,* and **JOSÉ CARLOS VÉLEZ COLÓN**, individually,<br><br>**Plaintiffs**<br><br>v.<br><br>**JOSÉ ENRICO VALENZUELA ALVARADO,** individually,<br>*Defendant* | **JURY TRIAL DEMANDED** |

**COMPLAINT FOR DEFAMATION**

**TO THE HONORABLE COURT:**

**COME NOW** the Plaintiffs, **VELEZ LAW GROUP LLC** and **JOSÉ CARLOS VÉLEZ COLÓN**, through undersigned counsel, and respectfully allege, aver, and pray as follows:

**JURISDICTIONAL STATEMENT**

1. This is an action for damages arising from defamation under the laws of Puerto Rico, specifically Title 32, Sections 3141-3147 of the Laws of Puerto Rico.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as there exists complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims occurred in this District.

## THE PARTIES

4. Plaintiff **VELEZ LAW GROUP LLC** (hereinafter "VLG") is a single-member limited liability company organized and existing under the laws of Wyoming, with its principal office at 30 N Gould St Ste R, Sheridan, WY 82801.

5. Plaintiff **JOSÉ CARLOS VÉLEZ COLÓN** (hereinafter "Attorney Vélez") is a natural person, of legal age, licensed to practice law, a resident of the State of Florida, and the sole member of Velez Law Group LLC.

6. VLG maintains a multi-jurisdictional practice representing clients in various matters, including representation of persons with disabilities under the Americans with Disabilities Act (ADA).

7. Defendant **JOSÉ ENRICO VALENZUELA ALVARADO** (hereinafter "Defendant" or "Attorney Valenzuela") is a natural person, of legal age, licensed to practice law, and a resident of Puerto Rico.

## STATEMENT OF FACTS

**A. Background**

8. Plaintiffs maintain a professional law practice that includes representation of persons with disabilities in cases seeking compliance with the ADA.

9. The professional reputation of both VLG as a law firm and Attorney Vélez as its sole practitioner is essential to their ability to practice law, maintain client relationships, and earn a livelihood.

10. On September 26, 2025, Defendant appeared on the television program "Primera Pregunta" broadcast by Telemundo Puerto Rico, hosted by Rafael Lenín López.[1]

**B. The Defamatory Statements**

11. During the live television broadcast, knowing that his statements would be transmitted to thousands of viewers and subsequently published on social media and websites, Defendant made the following false and defamatory statements about Plaintiffs:

    a. At minute 15:04: [Translation] "I would have liked you to ask him if he gives gift cards from different department stores in exchange for these people appearing and signing the lawsuits when they are filing them." (Original Spanish: "Yo a mí me hubiese gustado que tú le preguntaras si él le da gift cards de distintas tiendas por departamento a cambio de que estas personas comparezcan y firmen las demandas cuando están radicando.")

    b. At minute 15:16: [Translation] "He operates everything in cash. When he receives the money... The cash is then converted through a gift card.

---

[1] Available at https://www.youtube.com/watch?v=EqGqOYfHjQQ&t=1043s

And from there it is delivered to the testers." (Original Spanish: "Él opera todo por efectivo. Cuando él recibe el dinero... El efectivo entonces lo traduce a través de una gift card. Y de ahí entonces se le entrega a los testers.")

c. At minute 15:35: [Translation] "A gift card from a department store, a warehouse... of $1,000." (Original Spanish: "Una gift card de una tienda por departamento, un warehouse... de 1,000 $.")

d. At minute 15:52: Defendant characterized these false allegations as [Translation] "the scheme" (Original Spanish: "el esquema").

12. These statements were presented as assertions of fact, not opinion, specifically describing an alleged fraudulent operational method used by Plaintiffs in their law practice.

### C. Publication and Republication

13. Defendant knew or should have known that his statements would be:

    a. Broadcast live on television to thousands of viewers;

    b. Posted on Telemundo Puerto Rico's social media platforms; [2]

    c. Published on YouTube where they would remain permanently accessible;

    d. Republished and commented upon by viewers across multiple platforms.

---

[2] For example, see https://www.facebook.com/share/v/1Grx4SMePR/

14. Indeed, Telemundo Puerto Rico published these statements on its Facebook page with 305,000 subscribers, using the inflammatory headline: [Translation] "Lawyer is linked to serious allegations of ADA lawsuit schemes that also involve the Advocate for persons with disabilities. They allege he delivers $1,000 'gift cards' to his clients." (Original Spanish: "Abogado es vinculado a serios señalamientos por esquemas de demandas por Ley ADA que también involucran a Procurador de personas con impedimentos. Alegan que entrega 'gift cards' de $1,000 a sus clientes.")

15. The video on Facebook alone received thousands of views and generated hundreds of comments that repeated and amplified the defamatory statements.

**D. Evidence of Malice and Consciousness of Guilt**

16. Defendant made these statements with actual malice and reckless disregard for their truth, as evidenced by:

    a. His inability to provide *any* evidence when challenged or subsequently thereafter;

    b. His improper attempt to shift the burden of proof, stating at minute 16:40: [Translation] "You're the one who needs to give explanations" (Original Spanish: "A ti es el que te corresponde dar explicaciones");

    c. His visible reaction when asked about the gift card allegations - at minute 16:35, Defendant displayed a slight smile, demonstrating consciousness of the inflammatory nature of his false accusations;

    d. His hostile response when pressed for evidence, calling Attorney Vélez [Translation] "coward" (Original Spanish: "cobarde") at minute 17:12.

    e. When Attorney Vélez stated at minute 17:38 [Translation] "You have just defamed me" (Original Spanish: "Usted me acaba de difamar") and directed the moderator to ask Defendant for proof [Translation] "Ask, Lenin, what proof he has" (Original Spanish: "Pregúntale a Lenin qué prueba tiene"), Defendant failed to provide any factual basis for his allegations.

**E. Public Hatred and Contempt**

17. As a direct result of Defendant's defamatory statements, Plaintiffs were exposed to public hatred, contempt, and ridicule, as evidenced by Facebook comments including:

    a. [Translation] "Tremendous charlatan" (Original Spanish: "Tremendo charlatán")

    b. b. [Translation] "That lawyer must be a crook" (Original Spanish: "Ese abogado debe ser un chanchullero")

    c. [Translation] "The [Commonwealth] IRS and FBI should track this man and the lawyer" (Original Spanish: "Que Hacienda y el FBI le siga el rastro a ese señor y al abogado")

    d. [Translation] "Hustler, charlatan" (Original Spanish: "Buscon, charlatan")

    e. [Translation] "He has the face of a hustler" (Original Spanish: "Tiene tremenda cara de buscón")

    f. [Translation] "That GUY IS EXCREMENT, SCUM" (Original Spanish: "Ese TIPO ES UN ESCREMENTO UNA ESCORIA")

    g. [Translation] "With that crook face" (Original Spanish: "Con esa cara de chanchullero")

    h. [Translation] "What a charlatan the four-eyes is" (Original Spanish: "Que charlatán es el cuatro ojo")

18. These comments, viewed by thousands, demonstrate the severe reputational damage caused by Defendant's false statements.

**F. Falsity of the Statements**

19. The statements made by Defendant are categorically and demonstrably false. Plaintiffs have never:

    A. Provided gift cards to clients or any person in connection with ADA litigation;

    B. Engaged in any scheme to convert cash to gift cards;

C. Distributed payments of any kind to "testers" or clients;

**G. Damages to Plaintiffs**

20. Both VLG and Attorney Vélez have suffered severe and ongoing damages: a.

    **Damage to VLG**: As a law firm, VLG's reputation for ethical practice is essential to its existence. The false allegations have:

    A. Damaged its ability to attract and retain clients;

    B. Subjected it to public ridicule and contempt;

    C. Threatened its business relationships;

    D. Caused economic losses from lost and prospective clients;

    E. Created a permanent digital record associating the firm with fraud or improper conduct

21. **Damage to Attorney Vélez**: As the sole member of VLG and individually named target of the defamation:

    A. His professional reputation has been severely damaged;

    B. He faces potential disciplinary investigations;

    C. His ability to practice law effectively has been impaired;

    D. He has suffered mental anguish and emotional distress;

    E. His economic livelihood is threatened.

22. The defamatory statements impute conduct that would constitute professional misconduct, fraud, and violations of ethical rules, potentially subjecting both Plaintiffs to regulatory action and loss of ability to practice law.

**H. Specific Economic Losses**

23. As a direct and proximate result of Defendant's defamatory statements broadcast on September 26, 2025, Plaintiffs have suffered concrete and quantifiable economic damages, including but not limited to:

    A. **Lost Title II ADA Litigation**: **PERSON A**, a client with a pending Title II ADA case against a Puerto Rico municipality for systemic failures in sidewalk accessibility throughout a municipality's pedestrian infrastructure specifically withdrew from representation after learning of Defendant's false allegations about gift card payments and fraudulent schemes. This client expressly stated that they did not want to be associated with the alleged "scheme" described by Mr. Valenzuela on television.

    B. **Economic Impact of Title II Loss**: Title II ADA cases involving entire municipal sidewalk systems are complex, multi-year litigations requiring extensive discovery, expert witnesses, site inspections, and federal court proceedings. The lost representation in this single Title II matter represents approximately 500-750 billable hours over the life of the case at prevailing market rates of $200-$250 per hour for specialized ADA Title II counsel in federal court, resulting in lost attorney's fees of not less than $100,000 that would have been recoverable under 42 U.S.C. § 12205.

    C. **Loss of Title III ADA Clients: PERSON B**, a client with four meritorious Title II and Title III ADA claims against public entities and places of public accommodation for architectural barriers, likewise terminated or declined representation following Defendant's defamatory broadcast. Each of these matters represented potential attorney's fees in the range of approximately $25,000 to $50,000 per case.

    D. **Ongoing Business Injury**: The persistence of these false statements on digital platforms continues to deter potential clients from seeking Plaintiffs' representation in both Title II and Title III matters, causing ongoing and future economic harm that is substantial and continuing.

24. These economic losses are distinct from, and in addition to, the reputational damages, mental anguish, and other compensatory damages suffered by Plaintiffs. In particular, the Title II client, PERSON A, explicitly stated that they were withdrawing from representation because of Mr. Valenzuela's defamatory allegations, thereby establishing direct causation between the broadcast and Plaintiffs' economic injuries. Likewise, PERSON B, who had four meritorious Title II and Title III ADA claims, also terminated or declined representation after the same broadcast, resulting in the loss of additional matters each valued at approximately $25,000 to $50,000 in attorney's fees. Together, these withdrawals demonstrate the immediate and quantifiable economic harm caused by Defendant's defamatory conduct.

## CAUSE OF ACTION – DEFAMATION

## (Libel, Slander, and Defamation Per Se)

25. Plaintiffs hereby incorporate by reference paragraphs 1 through 22 as if fully set forth herein.

26. Defendant is liable to Plaintiffs under one or more theories of defamation recognized under Puerto Rico law:

    a. **Slander** (32 L.P.R.A. § 3143): The oral statements made during the live broadcast falsely imputed professional misconduct and criminal behavior, directly injuring Plaintiffs in their profession and business.

    b. **Libel** (32 L.P.R.A. § 3142): Knowing his statements would be published in written form on websites and social media, Defendant's defamation was transmitted through written digital media, exposing Plaintiffs to public hatred and contempt.

    c. **Slander Per Se**: The statements constitute defamation per se as they impute: (i) Conduct constituting crimes of moral turpitude (fraud); (ii) Serious professional misconduct; (iii) Unfitness in trade or profession.

27. Defendant acted with actual malice, making statements he knew were false or with reckless disregard for their truth.

28. The statements do not fall within any privilege recognized under 32 L.P.R.A. § 3144, as they were made outside any official proceeding and without factual basis.

29. As a natural and proximate result, Plaintiffs have suffered damages exceeding $75,000.00, including injury to reputation, loss of business, mental anguish, and ongoing economic harm.

## JURY TRIAL DEMAND

30. Plaintiffs hereby demand trial by jury on all issues so triable.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs VELEZ LAW GROUP LLC and JOSÉ CARLOS VÉLEZ COLÓN respectfully submit that the allegations presented in this Complaint establishes that Defendant JOSÉ ENRICO VALENZUELA ALVARADO committed defamation when he appeared on live television on September 26, 2025, and falsely accused Plaintiffs of operating a fraudulent scheme involving the payment of thousand-dollar gift cards to clients in exchange for their participation in ADA litigation. These statements were made without any factual basis, without any evidence, and with actual malice, as demonstrated by Defendant's inability to provide proof when challenged, his improper attempt to shift the burden of proof to Plaintiffs, and his visible smile when making these inflammatory accusations.

The defamatory nature of Defendant's conduct is established through multiple theories under Puerto Rico law. His oral statements during the broadcast constitute slander under 32 L.P.R.A. § 3143, as they falsely imputed to Plaintiffs the commission of professional misconduct and criminal behavior that directly injured them in their

profession and business. These same statements constitute libel under 32 L.P.R.A. § 3142, as Defendant knew or should have known that his words would be published in written form across social media platforms and websites, where they would remain permanently accessible to the public. Most significantly, these statements constitute common-law slander per se, as they impute conduct involving crimes of moral turpitude, serious professional misconduct, and unfitness to practice law.

The malicious nature of Defendant's conduct is particularly evident from the sequence of events during the broadcast. When moderator Rafael Lenín López asked about the gift card allegations at minute 16:35, Defendant displayed a slight smile, demonstrating his consciousness of the inflammatory and false nature of his accusations. When pressed for evidence, Defendant could provide none. Instead, he attempted to shift the burden to Plaintiffs, stating that Attorney Vélez was the one who needed to give explanations. When Attorney Vélez directly challenged him by stating "You have just defamed me" and asked the moderator to inquire about Defendant's proof, Defendant still failed to provide any factual basis for his allegations. His response was to become hostile, calling Attorney Vélez a coward and threatening counter-litigation.

The damage caused by Defendant's defamatory statements has been severe and multifaceted. The broadcast reached thousands of viewers on live television and was subsequently published on Telemundo Puerto Rico's Facebook page, which has 305,000 subscribers, with the inflammatory headline "Lawyer is linked to serious

allegations of ADA lawsuit schemes that also involve the Advocate for persons with disabilities. They allege he delivers $1,000 'gift cards' to his clients." This publication generated hundreds of comments that subjected Plaintiffs to public hatred and contempt, with viewers calling Attorney Vélez a "tremendous charlatan," "excrement," "scum," and suggesting that the FBI and IRS should investigate him. These comments, viewed by thousands more, amplified and perpetuated the defamatory statements, creating a permanent digital record that continues to damage Plaintiffs' reputation.

The economic harm suffered by Plaintiffs has been concrete and substantial. As a direct result of Defendant's false statements, Person A, who had retained Plaintiffs for a complex Title II ADA case against a Puerto Rico municipality for systemic failures in sidewalk accessibility, withdrew from representation. This client explicitly stated that the withdrawal was because they did not want to be associated with the alleged scheme described by Mr. Valenzuela on television. This single case represented approximately 500 to 750 billable hours over the life of the litigation at prevailing market rates of $200 to $250 per hour, resulting in lost attorney's fees of not less than $100,000 that would have been recoverable under federal law. Similarly, Person B, who had four meritorious Title II and Title III ADA claims, also terminated representation after the broadcast, with each matter representing potential attorney's fees of $25,000 to $50,000. The persistence of these false statements on digital platforms continues to deter other potential clients from seeking Plaintiffs' representation.

Beyond the quantifiable economic losses, both Plaintiffs have suffered severe damage to their professional reputation, which is the foundation of any law practice. Velez Law Group LLC, as a professional entity, has been permanently associated with fraud and unethical conduct in the digital sphere. Attorney Vélez, as the sole member of the firm and the individual target of the defamation, faces potential disciplinary investigations, has suffered mental anguish and emotional distress, and has seen his ability to practice law effectively impaired. The defamatory statements impute conduct that could subject both Plaintiffs to regulatory action and potentially the loss of their ability to practice law entirely.

Given the egregious nature of Defendant's conduct, the absence of any privilege that would protect his statements, and the severe and ongoing damage to Plaintiffs, this Court should enter judgment in favor of Plaintiffs and against Defendant on the cause of action for defamation. Plaintiffs are entitled to compensatory damages in an amount to be proven at trial but not less than $500,000, reflecting both the economic losses directly traceable to Defendant's statements and the severe reputational harm that continues to affect their practice. The Court should also award punitive damages in an amount sufficient to punish Defendant for his malicious conduct and to deter others from making similar baseless defamatory statements about legal professionals.

Furthermore, given the continuing nature of the harm caused by the persistence of these defamatory statements in digital media, Plaintiffs request that

this Court enter permanent injunctive relief prohibiting Defendant from repeating, republishing, or further disseminating his false statements about Plaintiffs. The Court should also order Defendant to issue a public retraction and correction of equal prominence to his original defamatory broadcast, and to take affirmative steps to request the removal of the defamatory content from all digital platforms where it currently exists.

Plaintiffs are also entitled to their reasonable attorneys' fees pursuant to 32 L.P.R.A. § 3147, which specifically provides for the recovery of attorneys' fees in defamation actions where the plaintiff prevails. Additionally, Plaintiffs request all costs associated with this litigation, including any expert witness fees necessary to establish the extent of the reputational and economic damage caused by Defendant's defamatory statements.

The Court should also enter a declaratory judgment establishing that Defendant's statements about Plaintiffs providing gift cards to clients, operating in cash to avoid detection, and running an illegal or improper scheme are categorically false and defamatory. Such a declaration is necessary to provide Plaintiffs with a clear judicial determination that they can use to rehabilitate their reputation in the legal and business community.

Finally, Plaintiffs request that the Court award pre-judgment interest on all damages from September 26, 2025, the date of the defamatory broadcast, as well as post-judgment interest at the statutory rate, and grant such other and further relief

as this Court deems just, proper, and equitable under the circumstances to remedy the severe harm caused by Defendant's malicious and baseless defamatory statements.

**RESPECTFULLY SUBMITTED** this day in San Juan, Puerto Rico, with the firm belief that the facts alleged and the applicable law entitle Plaintiffs to the full measure of relief requested herein.

In San Juan, Puerto Rico, this 29th day of September 2025.

**VELEZ LAW GROUP LLC**
*Civil Rights Division*


*s/José Carlos Vélez Colón*
José Carlos Vélez Colón
USDC-PR 231014

1449 S Michigan Ave, Ste 13234
Chicago, IL 60605

E:     vlg@velezlawgroup.com
T:     (787)-422-1881

**COUNSEL FOR VELEZ LAW GROUP LLC &
IN PROPRIA PERSONA**